UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| SAMANTHA COMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. |
| | ) | 5:12-cv-302-JMH |
| CITY OF HARRODSBURG, KY, ET. | ) | |
| AL., | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*

This matter is before the Court on Defendants City of Harrodsburg, City of Harrodsburg Police Department, Ernie Kelty in his official capacity as a former Chief of Police of the Harrodsburg Police Department, and Jason Elder in his official capacity as a former police officer of the Harrodsburg Police Department's motion to dismiss (D.E. 5) and supplemental motion to dismiss (D.E. 11) numerous named defendants and claims from Plaintiff Samantha Compton's Complaint (D.E. 1) and Amended Complaint. (D.E. 10). Plaintiff has responded (D.E. 15) and Defendants have replied (D.E. 21). Therefore, this matter is now ripe for review.[1]

---

[1] Ernie Kelty and Jason Elder, in their individual capacities, are not addressed in this motion. The claims against them in their individual capacities remain unaffected.

## I. FACTUAL BACKGROUND

On January 20, 2012, Defendant Jason Elder, a former police officer of the Harrodsburg Police Department, pleaded guilty to numerous charges of rape in the third degree, sodomy in the third degree, and sexual abuse in the first degree. (D.E. 10 at 5). The charges stemmed from a lengthy sexual relationship with Plaintiff, Samantha Compton, who was only fourteen years old when the relationship began. (D.E. 10 at 4—5). Defendant Elder is currently serving his sentence at the Kentucky State Penitentiary. (D.E. 10 at 5).

Throughout Defendant Elder's relationship with Plaintiff, he was employed by the Harrodsburg Police Department. (D.E. 10 at 4—5). Plaintiff contends that it was through this position of authority that Defendant Elder was able to both initiate and maintain his relationship with her. (D.E. 10 at 4—5).

During Defendant Elder's tenure as a Harrodsburg police officer, Defendant Ernie Kelty served as the Chief of Police of the Harrodsburg Police Department. (D.E. 10 at 4). According to the Complaint, Plaintiff's father informed Defendant Kelty about Defendant Elder's relationship with Plaintiff soon after he discovered their involvement. (D.E. 10 at 5). Plaintiff claims that

2

Defendant Kelty did not take any immediate disciplinary action against Defendant Elder for his conduct. (D.E. 10 at 5). She also claims the City was negligent in hiring and supervising Defendant Elder, among other claims. (D.E. 10 at 7—8).

## II. PROCEDURAL BACKGROUND

Soon after Defendant Jason Elder pleaded guilty to the numerous sexual misconduct charges referenced above, Plaintiff initiated this lawsuit against the City of Harrodsburg, the City of Harrodsburg Police Department, Ernie Kelty, both individually and in his official capacity, and Jason Elder, both individually and in his official capacity. (D.E. 10 at 1). Plaintiff alleges violations of her civil rights under 42 U.S.C. § 1983 against the City of Harrodsburg stemming from deprivations under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, assault and battery claims against Defendant Elder individually, the Tort of Outrage against the City of Harrodsburg, Defendant Kelty, and Defendant Elder, general negligence claims against the City of Harrodsburg, claims for negligent hiring, screening, and/or supervision of Defendant Elder against the City of Harrodsburg, and failure to report childhood sexual assault and abuse against Defendant Elder

3

individually.   (D.E. 1; D.E. 10).   Additionally, Plaintiff seeks punitive damages and references violations of the Kentucky Constitution in her Complaint.   (D.E. 10 at 5).

As an initial matter, Plaintiff voluntarily agreed in her response to dismiss several of the parties and claims that Defendants moved to dismiss.   Namely, Plaintiff has agreed to dismiss all claims against the City of Harrodsburg Police Department, all claims against Ernie Kelty and Jason Elder in their official capacities, Plaintiff's First Amendment claim against all parties, Plaintiff's Fifth Amendment claim against all parties, Plaintiff's Eighth Amendment claim against all parties, Plaintiff's Tort of Outrage claim against the City of Harrodsburg, and Plaintiff's request for punitive damages against the City of Harrodsburg.   (D.E. 15 at 9—14).   In light of these stipulations, the above claims are dismissed.   Therefore, for the purposes of this motion, the only remaining defendant is the City of Harrodsburg [hereinafter "City"].

At the behest of the City, Plaintiff has also clarified in her response that her assault and battery claim and childhood sexual assault and abuse claim under KRS 413.249 and KRS 446.070 are directed solely towards Elder. (D.E. 15 at 12).   Hence, these claims shall not be

4

addressed at this juncture as Elder has not joined in the motion to dismiss *sub judice*.

Additionally, the City has moved for a partial dismissal of Plaintiff's Fourteenth Amendment claim. (D.E. 5 at 9). Essentially, the City argues that there are five separate sections in the Fourteenth Amendment, and the only applicable section to this case is the first. (D.E. 5 at 9). Therefore, the City moves this Court to dismiss any claims that fall outside the scope of the first section of the Fourteenth Amendment. (D.E. 5 at 10). Plaintiff concedes in her response, however, that only Section I of the Fourteenth Amendment is applicable to this case. (D.E. 15 at 11). There are no facts or claims presented in Plaintiff's Complaint that sound of anything but a substantive due process claim for the violation of Plaintiff's bodily integrity pursuant to Section I of the Fourteenth Amendment. (D.E. 1; D.E. 10). Furthermore, Plaintiff has readily agreed to refrain from interjecting inapplicable sections of the Fourteenth Amendment in this case. (D.E. 15 at 11). Therefore, because no claims have been pleaded under the remaining four sections of the Fourteenth Amendment, the City's partial motion to dismiss Plaintiff's Fourteenth Amendment claim is granted in part without further discussion.

The City also moves this Court to dismiss Plaintiff's claim that the City violated the Kentucky Constitution. (D.E. 5 at 10). The City acknowledges that Plaintiff did not expressly include a separate count seeking redress for violations of the Kentucky Constitution; however, because the Complaint references the Kentucky Constitution in passing, the City requests this Court to dismiss Plaintiff's claim "[t]o the extent the Complaint can be read to assert [such] claim." (D.E. 5 at 10). In response, Plaintiff clarified that she has not pleaded or alleged a private right of action under the Kentucky Constitution in her Complaint. (D.E. 15 at 11). Therefore, the City's motion to dismiss Plaintiff's claim under the Kentucky Constitution is also granted without further discussion.

After disposing of the above issues, there are only four remaining claims that the City seeks to dismiss which Plaintiff contends are not subject to dismissal: 1) Plaintiff's § 1983 claim against the City based on Defendant Elder's violation of her Fourth Amendment rights; 2) Plaintiff's claim against the City of Harrodsburg for failure to report child abuse pursuant to KRS § 620.030; 3) Plaintiff's claim against the City for negligent hiring;

and 4) Plaintiff's general negligence claim against the
City.

### III. STANDARD OF REVIEW

The City filed the current motion as a motion to
dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  However, in
response to the City's motion, Plaintiff attached several
exhibits, and, in reply, the City attached additional
exhibits.  None of these exhibits are formally part of the
pleadings in this matter.  Rule 12(d) provides that if
"matters outside the pleadings are presented to and not
excluded by the court, the motion must be treated as one
for summary judgment under Rule 56.  However, "[a] district
court is free to refuse to accept materials outside the
pleadings in order to keep the motion under Rule 12."
*Ennis v. Wells Fargo Bank, N.A.*, 2011 WL 1118669, *2 (W.D.
Mich. Mar. 25, 2011) (citing *Max Arnold & Sons, LLC v. W.L.
Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006)).  In this
instance, the Court wishes to preserve the City's motion as
a 12(b)(6) motion to dismiss.  Therefore, the Court has
limited its analysis to matters solely within the
pleadings.

A motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6) tests the sufficiency of the plaintiff's
complaint.  The Court views the complaint in the light most

7

favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 570).

## IV. ANALYSIS

For the reasons which follow, Plaintiff's § 1983 claim against the City based on Defendant Elder's violation of her Fourth Amendment rights, her claim against the City for failure to report child abuse pursuant to KRS § 620.030, and her claim against the City for the negligent screening and/or hiring of Defendant Elder shall be dismissed. The remaining claim at issue, her general negligence claim against the City, shall survive the City's motion.

### A. Plaintiff's § 1983 claim against the City for violation of her Fourth Amendment rights.

For the sake of clarity, the Court notes that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978). That being said, Plaintiff alleged in her Complaint that the

8

City, through Defendant Kelty, "explicitly or implicitly authorized, approved or knowingly acquiesced to the clearly unconstitutional actions and conduct of its employee," Defendant Elder.  (D.E. 10 at 5).  Whether Plaintiff can meet her burden to show that the City knew about Defendant Elder's relationship with Plaintiff and failed to act, and thus, in effect, whether the City may be held liable under § 1983, remains to be seen.  However, for the purposes of this motion, the Court will examine whether the City can be liable under § 1983 on the basis of a violation of Plaintiff's Fourth Amendment rights.

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government.  U.S. CONST. amend. IV.  Although Plaintiff was never arrested, she posits that Defendant Elder seized her in violation of her Fourth Amendment rights by displaying his official authority as a police officer and using this authority to gain physical control over her.  (D.E. 15 at 13).  Therefore, because Plaintiff alleges that Defendant Elder was acting under the color of state law in his official capacity as a police officer during their relationship, she argues that relief under § 1983 against the City of Harrodsburg is appropriate pursuant to this violation of her Fourth Amendment rights.  While the facts of this case

suggest a viable § 1983 claim based on Defendant Elder's violation of Plaintiff's Fourteenth Amendment due process rights, Plaintiff's Fourth Amendment rights were not violated even when all of the facts alleged on the face of the Complaint are viewed in her favor. Thus, Plaintiff's Fourth Amendment claim must be dismissed for failure to state a claim.

To be clear, Plaintiff correctly notes that an actual arrest is not essential to establishing a violation of the Fourth Amendment, since a seizure can occur when "there is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989). However, the mere fact that a seizure can occur without an arrest does not mean that Plaintiff has pleaded sufficient facts to show a Fourth Amendment seizure in this instance. Plaintiff's cited cases, *California v. Hodari D.*, 499 U.S. 621 (1991), and *Brower v. Cnty. of Inyo*, 489 U.S. 593 (1989), illustrate this point nicely.

For example, in *Hodari D*, a defendant continued to run away from a shouting police officer chasing behind him on foot. *Hodari D.*, 499 U.S. at 623. Despite the fact that the officer acted under a show of authority while chasing the defendant down the street, the Court found that there

10

was not a Fourth Amendment seizure until the officer applied physical force to the suspect by physically tackling him. *Id.* at 629. Similarly, in *Brower*, the police put up a roadblock to trap Brower, who was driving a stolen car at high speeds in an effort to flee the police. *Brower*, 489 U.S. at 594. After Brower ran into the roadblock and died, his administrator brought a § 1983 action against the County, alleging that the roadblock put into place by the police officers constituted an unconstitutional seizure in violation of Brower's Fourth Amendment rights. *Id.* The Supreme Court agreed that because the police meant for Brower to be stopped by the roadblock and because he was so stopped, his administrator had at least stated a claim that Brower was seized under the Fourth Amendment. *Id.* at 599.

Both of these cases, cited by Plaintiff to show that one can be seized without an arrest, display the precise reasoning as to why Plaintiff was not seized. Indeed, Plaintiff in this case was not fleeing the police, nor was she stopped by some instrumentality that the police set in motion; to the contrary, and regardless of the voluntariness of her relationship with Defendant Elder, she alleges in her Complaint that she engaged in years of sexual contact with him. The mere alleged facts that

11

Defendant Elder was a police officer at the time of their relationship and that some of their sexual encounters may have taken place in his patrol car do not elevate their sexual relationship into a Fourth Amendment seizure.

Notably, § 1983 claims that involve sexual abuse or harassment by a state actor with facts most similar to Plaintiff's have been consistently construed as Fourteenth Amendment violations of substantive due process rights, not Fourth Amendment violations.   For example, in *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996), the Sixth Circuit found that allegations that a teacher touched a student in a sexual manner demonstrated a potential violation of § 1983 based on the student's substantive due process right to bodily integrity.   *Lilliard*, 76 F.3d at 724—25; *see also Wilson v. Luttrell*, 230 F.3d 1361 (6th Cir. 2000) (unpublished) (holding that sexual abuse by a state actor constitutes a constitutional deprivation under the due process clause that is sufficient to sustain a § 1983 action).

Section 1983 claims from other circuits that specifically involve the sexual abuse or harassment of civilians by police officers have similarly been interpreted as due process violations, even when the sexual abuse occurred during or immediately after a routine

12

traffic stop, a factual situation much closer to a traditional Fourth Amendment seizure than Plaintiff's. *See, e.g.*, *Haberthur v. City of Raymore, Mo.,* 119 F.3d 720, 723—24 (8th Cir. 1997) (holding that unwanted sexual fondling by a police officer violated the victim's substantive due process right to bodily integrity); *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001) ("Sexual misconduct by a police officer toward another generally is analyzed under the Fourteenth Amendment; sexual harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment."); *Jones v. Wellham,* 104 F.3d 620, 628 (4th Cir. 1997) (In a case involving rape by a police officer after a traffic stop, the Fourth Circuit described the violated right as a due process right). Further, in a Sixth Circuit unpublished opinion, the panel noted that "it is more than obvious that the right to not be raped by a law enforcement officer lies at the core of the rights protected by the Due Process Clause." *United States v. Morris*, No. 10-5508, 2012 WL 3519006, at *6 (6th Cir. Aug. 16, 2012), *cert. denied*, 2013 WL 57468 (U.S. Jan. 7, 2013) (No. 12-7273).

Therefore, in light of the facts presented in Plaintiff's Complaint and the authority from this circuit and others that have considered this issue, Plaintiff has

13

not stated a § 1983 claim for a violation of her Fourth Amendment rights, even when the allegations of her Complaint are taken in the light most favorable to her. Therefore, Plaintiff's Fourth Amendment claim against the City is dismissed. Her § 1983 claim based on Defendant Elder's violation of her Fourteenth Amendment substantive due process rights remains.

**B.  Plaintiff's claim against Defendant City of Harrodsburg for failure to report child abuse pursuant to KRS § 620.030.**

The City also moves to dismiss Plaintiff's claim against the City of Harrodsburg for its failure to report child abuse in violation of KRS § 620.030. Plaintiff argues that this claim survives because KRS § 446.070, Kentucky's codification of negligence per se, permits recovery for any injury sustained by a person from the violation of any Kentucky statute so long as the person is within the class of persons intended to be protected by the statute. KRS § 446.070; *Ezell v. Christian Cnty., Ky.*, 245 F.3d 853, 856 (6th Cir. 2001) ("KRS § 446.070 creates a private right of action for the violation of any statute so long as the plaintiff belongs to the class intended to be protected by the statute."). In this case, there is no dispute that the City of Harrodsburg violated KRS § 446.070. Moreover, the Court agrees with Plaintiff that

14

she was within the class of persons to be protected by the statute.   However, the City is correct that under Kentucky law, it appears that there is not a private right of action for violation of KRS § 620.030.   Therefore, Plaintiff's claim must be dismissed.

Under Sixth Circuit law, federal courts must apply § 446.070 when a Kentucky statute is violated "absent a contrary interpretation from the Kentucky courts" that the statute does not create a private right of action.  *Ezell*, 245 F.3d at 856.   To this Court's knowledge, there has not been any explicit authority to date from the Kentucky Supreme Court indicating whether such a right exists or not for § 620.030.   However, given this absence of authority, it is permissible for this Court to consider opinions from the Kentucky Circuit Courts and the Kentucky Court of Appeals to, in essence, predict what the Kentucky Supreme Court might say if confronted with this issue.  *Managed Health Care Assoc., Inc., v. Kethan*, 209 F.3d 923, 929 (6th Cir. 2000) (holding that Sixth Circuit courts are permitted to consider unpublished opinions from Kentucky Circuit Courts and the Kentucky Court of Appeals to determine how the Kentucky Supreme Court may likely decide a case).

In *Bramble v. Graham*, No. 2003-CA-001755-MR, 2004 WL 2151071 (Ky. Ct. App. Sept. 24, 2004) (discretionary review

15

denied), the Kentucky Court of Appeals held that the "statutory duty to report is no more than a general duty owed to the public at large." *Id.* at *2. In *Nelson v. Ky. Sch. Bds. Ins. Trust*, No. 06-CI-0976, 2007 WL 7731156 (Ky. Cir. Ct., Feb. 28, 2007), a Kentucky Circuit Court interpreted this statement from *Bramble* to mean that there is not a private right of action associated with a violation of § 620.030. *Id.* at *1.[2] Additionally, because this Court may also look to the rules of other jurisdictions who have addressed the issue to predict how the Kentucky Supreme Court would rule, it is relevant that other state supreme courts have held that the reporting statutes in their respective states do not create private rights of action. *See State v. Anderson*, 636 N.W.2d 26 (Iowa 2001); *Morris v. Canipe*, 528 So.2d 659 (La. App. 1988); *People v. Beardsley*, 688 N.W.2d 304 (Mich. App. 2004). Therefore, based on the opinions of the Kentucky Circuit Court, Kentucky Court of Appeals, and the holdings of other state supreme courts that have addressed this issue, the Court believes that the Kentucky Supreme Court would conclude that there is no private right of action

---

[2] A copy of this opinion has been filed along with this Memorandum Opinion and Order as an exhibit.

created by the statutory duty to report child abuse under §
620.030.  Consequently, Plaintiff's claim is dismissed.

### C. Plaintiff's claim against Defendant City of Harrodsburg for negligent screening and/or hiring.

Under Kentucky law, a plaintiff asserting a negligent
hiring claim must show that "(1) the employer knew or
reasonably should have known that the employee was unfit
for the job for which he was employed, and (2) the
employee's placement . . . at that job created an
unreasonable risk of harm to the plaintiff." *Stalbosky v.
Belew,* 205 F.3d 890, 894 (6th Cir. 2000) (citing *Oakley v.
Flor-Shin Inc.,* 964 S.W.2d 438, 442 (Ky. Ct. App. 1998)).
The City argues that Plaintiff failed to state a claim for
negligent hiring or screening, as her Complaint is deplete
of any factual allegations that Defendant Elder committed
sexual misconduct before he was hired as a police officer
or that the City had knowledge of any misconduct.  The
Court agrees.

The only sections of the Complaint and Amended
Complaint that could even begin to be construed as stating
a claim for negligent hiring and/or screening are paragraph
8, in which the Plaintiff states that the "offenses
described below resulted from the failure of the City to
employ qualified person(s) for positions of authority,"

17

paragraph 12, in which Plaintiff states that the department "failed to institute any (or adequate) policies, customs or practices, or to employ qualified persons," paragraph 25, in which Plaintiff states that violations were committed "on the basis of Defendant Kelty's failure to properly screen Elder upon application to the department," and paragraph 29, where Plaintiff states summarily that the the City breached its duty to Plaintiff by failing to screen or avoid hiring Defendant Elder as a police officer. (D.E. 10 at 3, 4, 6, 7). Additionally, Plaintiff notes that Defendant Elder was hired in 2002 with Defendant Kelty's approval. (D.E. 10 at 4).

It is clear, however, that Plaintiff's Complaint and Amended Complaint are completely devoid of allegations that Defendant Elder engaged in any sexual misconduct prior to his employment, and was thus unfit for duty as a police officer. Nor does the Plaintiff allege that Defendant Kelty or the City knew or should have known of any such misconduct. (D.E. 1; D.E. 10). Under the *Iqbal* and *Twombly* regime, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. However, in this case, it does not even appear that Plaintiff crossed this threshold, as the elements of a

18

cause of action for negligent screening and/or hiring are not even listed.

Other district courts in Kentucky have found similar complaints in negligent hiring cases to be insufficient to state a claim. *See Warner v. Bob Evans Farms, Inc.*, No. 5:09-cv-63-KKC, 2010 WL 1451354, at *3 (E.D. Ky. Apr. 8, 2010) (dismissing negligent hiring and retention claims where plaintiff failed to allege that defendant knew of employee's unfitness at time of hiring); *Stanley v. Our Lady of Bellefonte Hosp., Inc.*, CIV.A. 11-110-DLB, 2012 WL 4329265 at *8 (E.D. Ky. Sept. 20, 2012) (dismissing a plaintiff's complaint because he did not allege that the defendants knew or should have known at the time they hired the defendants they were unfit for their duties). Accordingly, Plaintiff's claim against the City for the negligent screening and/or hiring of Defendant Elder is dismissed for failure to state a claim.

### D. Plaintiff's general negligence claim against the City for its failure to control Jason Elder as his employer.

Under Kentucky law, "[a] principal is not liable under the doctrine of respondeat superior unless the intentional wrongs of the agent were calculated to advance the cause of the principal or were appropriate to the normal scope of the operator's employment." *Osborne v. Payne,* 31 S.W.3d

911, 915 (Ky. 2000) (citing *Hennis v. B.F. Goodrich Co.,* 349 S.W.2d 680, 682 (Ky. 1961)). The court further explained that "[t]he critical analysis is whether the employee or agent was acting within the scope of his employment at the time of his tortious act." *Id.* (citing *Wood v. Se. Greyhound Lines*, 302 Ky. 110, 113 (1946))

To be within the scope of employment, an employee's action must be of the same general nature as that authorized or incidental to the conduct authorized, i.e., the actions must be taken to advance the employer's desired ends. *Id.* (citing *Wood*, 302 Ky. at 114). Under the Kentucky approach, if an employee "acts from purely personal motives . . . which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 506 (5th ed. 1984) (quoted in *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005)).

In light of this authority, and when Plaintiff's alleged facts in her Complaint are viewed in the light most favorable to her, she has pleaded facts showing that Jason Elder may have been acting within the scope of his employment during their relationship. For example, Plaintiff states in her Complaint that it was through "his

position of authority" and "special trust" as a police officer that he was able to convince Plaintiff to initiate and maintain a sexual relationship with him. (D.E. 1 at 5). A determination of whether Defendant Elder was in fact acting within the scope of his employment during his relationship with Plaintiff is inappropriate on a motion to dismiss. Therefore, the City's motion to dismiss Plaintiff's general negligence claim against the City of Harrodsburg is denied.

## V. CONCLUSION

For the reasons stated above, **IT IS ORDERED:**

(1) that, per Plaintiff's stipulation, Defendants City of Harrodsburg Police Department, Ernie Kelty in his official capacity, and Jason Elder in his official capacity are **DISMISSED** as parties;

(2) that, per Plaintiff's stipulation, Plaintiff's First Amendment claim against all parties, Fifth Amendment claim against all parties, Eighth Amendment claim against all parties, Tort of Outrage claim against the City of Harrodsburg, and Plaintiff's request for punitive damages against the City of Harrodsburg are **DISMISSED WITH PREJUDICE;**

(3) that Defendant City of Harrodsburg's Motion to Dismiss (D.E. 5) and Supplemental Motion to Dismiss (D.E. 11) are **GRANTED IN PART** and **DENIED IN PART**, as follows:

A) Defendant City of Harrodsburg's motion for partial dismissal of Plaintiff's Fourteenth Amendment Claim is **GRANTED IN PART**;

B) Defendant City of Harrodsburg's motion to dismiss Plaintiff's claim that Defendant violated the Kentucky Constitution is **GRANTED**;

C) Defendant City of Harrodsburg's motion to dismiss Plaintiff's general negligence claim against the City of Harrodsburg IS **DENIED**;

D) Defendant City of Harrodsburg's motion to dismiss Plaintiff's § 1983 claim against the City on the basis of Defendant Elder's violation of Plaintiff's Fourth Amendment rights is **GRANTED** and **DISMISSED WITH PREJUDICE**;

E) Defendant City of Harrodsburg's motion to dismiss Plaintiff's claim against the City for failure to report child abuse pursuant to KRS § 620.030 is **GRANTED** and **DISMISSED WITH PREJUDICE**;

F) Defendant City of Harrodsburg's motion to dismiss Plaintiff's claim against the City for negligent screening and/or hiring is **GRANTED** and **DISMISSED WITHOUT PREJUDICE**;

22

(4) the Clerk shall **FILE** a copy of *Nelson v. Ky. Sch. Bds. Ins. Trust*, No. 06-CI-0976, 2007 WL 7731156 (Ky. Cir. Ct., Feb. 28, 2007), as an attachment to this Memorandum Opinion and Order.

This the 22nd day of February, 2013.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge